Argued March 16, reversed and remanded May 14, 1970

PHILLIPS ET UX, *Respondents, v.*
GARDNER, *Appellant.*
469 P2d 42

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and Donald R. Blensly, District Attorney, McMinnville.

*H. W. Devlin,* McMinnville, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Fort and Branchfield, Judges.

SCHWAB, C. J.

The defendant watermaster, who is charged with the duty of distributing water in Yamhill County in accordance with the rights of each user, threatened to cut off plaintiffs' domestic water supply and to empty plaintiffs' impoundment for that purpose to give water to a downstream user who holds the water right for irrigation prior in time to plaintiffs' domestic right. Plaintiffs brought suit to enjoin the defendant watermaster from so doing, claiming a statutory priority for domestic use under ORS 540.140. The trial judge granted the injunction and the defendant watermaster appeals, contending that ORS 540.140 has no application to the facts of this case. The plaintiffs' water certificate has a priority date of June 7, 1947; the downstream property owner's water certificate has a priority date of August 26, 1919.

During the months of August and September 1967, there was not sufficient water to serve both appropriators. The watermaster threatened to cut off plaintiffs' water supply and this gave rise to the suit in question. This controversy relates to surface water only, not to ground water available through wells.

ORS 540.140 was enacted in 1893. It reads:

"When the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall, subject to such limitations as may be prescribed by law, have the preference over those claiming such water for any other purpose,

and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes."

The statute has never been cited or discussed in any of the numerous opinions of the Oregon Supreme Court dealing with the application of Oregon water laws.

Oregon first adopted a comprehensive water code in 1909. Since then this code has been subject to major amendments. The reasons for the extensive body of statutory law and court rulings relating to the use and conservation of water in Oregon are succinctly set out in the Preface to United States Dep't of Agriculture, Selected Problems in the Law of Water Rights in the West, Misc Pub No 418 (Wells A. Hutchins 1942):

> "By and large, water is plentiful east of the tier of States from North Dakota to Texas. Within those six States and their western neighbors, however, water is scarce and provides a limiting factor on the productivity of the soil. It is understandable, therefore, that the water law of these Western States presents a complexity of pattern and a fullness of development not to be found in the law relating to waters in the East * * *."

The supply of Oregon water versus the demand for it required serious attention of the legislature even in Oregon's sparsely-settled days of more than half century ago. The legislative assembly which enacted the 1909 Water Act, General Laws of Oregon, ch 216, in appending to it § 74, the emergency clause, declared:

> "* * * there is great uncertainty existing throughout the State with reference to the water rights of various parties along the streams, ditches and waterways as to their several interests therein, entailing expensive litigation and engendering

. many animosities and much bad blood, thereby endangering the public peace and safety of many sections of the State * * *."

The 1909 Act established a system for the filing of applications for the appropriation of water with the state engineer in § 47 (ORS 537.130(1)), and provided in § 46 (ORS 537.140), that applications contain, among other information, the nature and amount of proposed use. Section 46 discloses that the legislature had in mind that there were varying uses of water for among the uses to which it there refers are those for agriculture, power, municipal water supply and mining. Section 54 (ORS 537.250(3)) provides "The right acquired by an appropriation shall date from the filing of the application in the office of the State Engineer."

The Act, § 73, provides "All laws and parts of laws so far as in conflict or inconsistent with the provisions of this act are hereby repealed."

The plaintiffs argue that despite the provisions of the 1909 Water Act the holder of a certificate for domestic water use has a preference by virtue of ORS 540.140 over a prior recorded water right for other purposes. They cite as authority for their position on this issue ORS 536.220, 536.310, 536.330 and 537.525.

ORS 536.210, et seq., enacted in 1955, establish a water resources board, direct it to develop comprehensive programs for conserving and augmenting water resources for all purposes, and outline factors to be considered by the board in formulating a water resources program. It is clear from a reading of these sections that it was not intended that they supersede the previously prescribed laws governing the issuance

and priority of water rights certificates. In fact, ORS 536.320 specifically provides:

> "The board shall not have power:
> "* * * * *
> "(2) To modify, set aside or alter any existing right to use water or the priority of such use established under existing laws * * *.
> "* * * * *"

ORS 537.525 deals with ground waters, not surface waters.

Although the 1909 Act did not directly state that thereafter priorities should be based on priority in time and not on nature of use, the whole thrust of the Act clearly indicates such a purpose. The insufficiency of water in parts of Oregon is what gave rise to Oregon's comprehensive water code commencing with the 1909 Act. Priorities are meaningful only in times of shortage. If we were to apply ORS 540.140 as plaintiffs would have us do, in times of shortage—the only time when there is any reason for priorities—water would be allocated based upon the nature of the various uses involved, not on the basis of the effective date of appropriation. The result would be that the priorities established by the 1909 Act and subsequent additions to it would be effective only as to appropriators within similar categories of use. It is hard for us to conceive that the 1909 and subsequent legislatures could have intended such a result without one word in the statutes to indicate their desire to adopt such a complicated scheme. It may be that ORS 540.140 still has viability as to rights which were perfected prior to 1909 or as to rights bearing the same effective date. Since neither situation is involved in the case at bar, we need not consider those possibilities here.

Appealing as plaintiffs' humanistic arguments may be, if viewed from a single point of view, it is our opinion that the statutory interpretation they seek is in conflict with what we perceive as clear legislative intent—the substitution of priority based on time of appropriation for the pre-1909 statutory preference (ORS 540.140) based on the nature of the use.

Reversed and remanded for the entry of a decree in accordance with this opinion.